UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA


Illinois Farmers Insurance Company, et al.,

    Plaintiffs,

v.                                        **MEMORANDUM OPINION AND ORDER**
                                                  Civ. No. 17-5090 (MJD/TNL)

Lake Street Chiropractic Clinic, P.A., et al.,

    Defendants.

---

    Richard S. Stempel and Gregory A. Maus, Stempel & Associates, PLC, Counsel for Plaintiffs.

    David W. Asp and Kristen G. Marttila, Lockridge Grindal Nauen P.L.L.P., Counsel for Defendants Lake Street Chiropractic Clinic, P.A., Restore Chiropractic Clinic, P.A., Renew Chiropractic Clinic P.A., Great Lakes MRI, P.A., Midwest Pain Relief, P.A., Excel MRI, P.A., Joshua Jason Anderson, D.C. and Scott Hollington, M.D.

    Martin A. Carlson, Law Offices of Martin A. Carlson, Ltd., Counsel for Defendants Anthony Nowezki, Medicus Massage, Inc., It's All About You, LLC, Back in Balance, LLC, and Inocencio Camacho Herrera.

---

    This matter is before the Court on Defendants Lake Street Chiropractic Clinic, P.A., Restore Chiropractic Clinic, P.A., Renew Chiropractic Clinic P.A., Great Lakes MRI, P.A., Midwest Pain Relief, P.A., Excel MRI, P.A., Joshua Jason Anderson, D.C. and Scott Hollington, M.D.'s Motion to Dismiss [Doc. No. 60]

1

and Defendants Anthony Nowezki, Medicus Massage, Inc., It's All About You, LLC, Back in Balance, LLC, and Inocencio Camacho Herrera's Motion to Dismiss. [Doc. No. 54]

## I.     BACKGROUND

Plaintiffs are insurance companies authorized to conduct business and to issue policies of automobile insurance in the State of Minnesota.  (Am. Comp. ¶ 20.)  Pursuant to Minnesota law, Plaintiffs are required to provide basic economic benefits for each policy of insurance they sell in Minnesota, and as of June 2017, Plaintiffs have paid $1,880,705.03 to Defendants, with an additional $47,971.51 in bills pending for alleged necessary and reasonable chiropractic treatment during the relevant time period.  (Id. ¶ 21.)

Defendant Joshua Anderson is a chiropractor licensed in the State of Minnesota, and is the owner and CEO of Defendants Lake Street Chiropractic Clinic, P.A., Restore Chiropractic, P.A., Renew Chiropractic, P.A., Great Lakes MRI, P.A., Midwest Pain Relief, P.A., and Excel MRI, P.A (collectively the "Anderson Clinics") and Defendant Clinica de Accidentes, LLC. (Id. ¶ 22.)

Defendant Anthony Nowezki is the owner and CEO of Defendant It's All About You, LC, Medicus Massage, Inc. and Back in Balance, LLC (collectively the

"Nowezki Clinics"). (Id. ¶ 30.) Defendant Scott Hollington is a medical doctor licensed to practice medicine in the State of Minnesota. (Id. ¶ 33.) Finally, Defendant Camacho is the chief clinic runner for Anderson and the Anderson and Nowezki Clinics. (Id. ¶ 34.) Camacho personally solicited motor vehicle accident victims, including but not limited to Plaintiffs' insureds. (Id.) Camacho further directed other runners and individuals to solicit motor vehicle accident victims, including but not limited to Plaintiffs' insureds, for treatment with the Anderson and Nowezki Clinics. (Id.)

In this action, Plaintiffs have alleged that Defendants have conspired and acted to create a joint enterprise for purposes of defrauding Plaintiffs out of no-fault medical expense benefits payments. (Id. ¶ 37.) The enterprise consists of Anderson creating, controlling and directing the Anderson Clinics to provide a systematic pattern of predetermined diagnosis, predetermined treatment protocol and unnecessary and unreasonable treatment to Plaintiffs' insureds. (Id.) Anderson and the Anderson Clinics also refer Plaintiffs' insureds to Nowezki and the Nowezki Clinics to increase the amounts billed to Plaintiffs in furtherance of the joint enterprise. (Id.) Also as part of the scheme, Nowezki and the Nowezki Clinics refer patients back to Anderson and the Anderson Clinics

for additional chiropractic treatment and/or endorse the treatment plan from Anderson for Plaintiffs' insured claimants. (Id.)

Plaintiffs further allege that Defendants have formed an ongoing association for purposes of defrauding Plaintiffs and its insureds out of available no-fault medical expense benefits. (Id. ¶ 38.) To further the scheme, Defendants have used the mails and wire communications. (Id. ¶¶ 39, 40) The scheme involved creating multiple chiropractic clinics to initiate treatment to Plaintiffs' insureds and bill for template treatment. (Id. ¶ 42) Anderson then created a pain clinic to bill for unnecessary consultations and to associate with a medical doctor, Hollington, to prescribe unnecessary medications such as oxycodone. (Id.)

Anderson allegedly directed the clinics to refer patients to Nowezki and the Nowezki Clinics for unnecessary massage therapy and that the Nowezki Defendants knowingly participated in the scheme to defraud Plaintiffs of no-fault medical expense benefits by conspiring with Anderson and the Anderson Clinics to utilize pattern and practice treatment, which was unreasonable and unnecessary and by templating patient treatment records in support of the scheme. (Id. ¶ 43.)

Anderson further directed the Anderson Clinics and Hollington to refer Plaintiffs' insured claimants to Anderson's MRI facilities for MRI scans that were unnecessary for diagnosis and/or treatment. (Id. ¶ 45.)

Plaintiffs allege that the scheme required motor vehicle accident victims in order for Defendants to fraudulently bill the Plaintiffs, and that Camacho supplied this need by identifying and soliciting such victims for Defendants. (Id. ¶ 46.) Camacho received $1,500 cash for each person directed to Anderson, Nowezki and their clinics. (Id.) Defendants regularly used the mail and/or wire communications to bill the Plaintiffs for this unnecessary treatment. (Id. ¶ 47)

Plaintiffs have brought a number of claims against Defendants: Count I - RICO, 18 U.S.C. §§ 1961(3) and 1964(c); Count II - Common Law Fraud; Count III - Negligent Misrepresentation; Count IV - Disgorgement and/or Recovery of Minnesota No-Fault Benefits under Minn. Sat. § 65B.54; and Count V - Unjust Enrichment.

Defendants now move the Court to dismiss the Amended Complaint, claiming dismissal is warranted pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b).

**II.     Standard of Review**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move the Court to dismiss a claim if, on the pleadings, a party has failed to state a claim upon which relief may be granted.  In reviewing a motion to dismiss, the Court takes all facts alleged in the complaint to be true.  <u>Zutz v. Nelson</u>, 601 F.3d 842, 848 (8th Cir. 2010).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  Thus, although a complaint need not include detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

<u>Id.</u> (citations omitted).

In addition, pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, a party alleging fraud is required to "state with particularity the circumstances constituting fraud[.]"  "[T]he complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result."  <u>U.S. ex rel. Thayer v. Planned Parenthood of the Heartland</u>, 765 F.3d 914, 916 (8th Cir. 2014).  When asserting a fraudulent scheme, it is not necessary to include the "specific details of *every* alleged fraudulent claim" but the plaintiff must provide some

representative examples, "specifying the time, place, and content of [the defendant's] acts and the identity of the actors." Id. at 917 (quoting United States ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 557 (8th Cir. 2006)).

### A.    Whether Claims Meet Rule 9(b) Heightened Pleading Standard

The Court finds that the allegations in the Amended Complaint meet the particularity requirements of Rule 9(b).  Plaintiffs identify "who" is involved the fraudulent scheme, "what" the scheme consisted of, "when" and "where" the fraudulent scheme took place and "how" the scheme worked.  The fraudulent scheme is further identified through a number of representative examples to show that "runners" identified individuals involved in car accidents, who were then referred to the defendant clinics for treatment that was unnecessary.

For example, Plaintiffs allege that one patient, M.R., was found not to have any neck or back pain following the car accident, but that M.R. was provided extensive neck and back treatments at one of the Nowezki Clinics.  (Id. ¶ 121.) Another patient, E.M.A., also received treatment from one of the Nowezki Clinics despite advising Plaintiffs she was not injured.  (Id. ¶¶ 115-16.)

In another representative example, patient L.D. stated under oath that he only received massages for seven to eight minutes at the Lake Street Chiropractic

Clinic, but that he was billed for a full fifteen to twenty minutes for each session. (Id. ¶ 93.)

Plaintiffs also include allegations concerning Hollington's fraudulent conduct.  For example, with regard to patient W.R.M., Hollington stated the cervical MRI scan findings supported the treatment plan, when in fact, the MRI scan results were noted to be unremarkable.  (Id. ¶ 111.)  Hollington also diagnosed patient M.R. with lumbar pain from an accident in which M.R. was initially diagnosed at an emergency department with only a head injury.  (Id. ¶ 121.)

Hollington also submitted bills for treatment not rendered or medically necessary.  For example, Plaintiffs allege that Hollington and/or Midwest Pain Relief produced a false medical report and a bill for services for patient M.M.  These medical services could not have been performed, however, because M.M. had died nine days earlier.  (Id. ¶ 87.)

Another representative example involves J.M. – who suffered no injury from the car accident as video evidence shows that J.M. was not struck by the car. (Id. ¶¶ 94-95.)  Midwest Pain Relief nonetheless treated J.M. despite the fact he had no diagnosable injury.  (Id.)

8

Plaintiffs further allege that Defendant Excel was used by Anderson to give unnecessary MRIs to increase the amount billed to Plaintiffs.  (Id. ¶¶ 22, 28, 45 and 54.)  They allege that Excel was used for unnecessary MRIs for which there was no basis, and to an individual with no injury.  (Id. ¶¶ 100, 109, 115, 116.)

Plaintiffs have also included factual allegations that are based on the first-hand information from Zulema Calderon, who provided clear details about how the fraud was perpetrated and who was involved.  For example, Calderon provided details regarding Anderson's use of a chiropractic evaluation to convince accident victims that they had more serious injuries than they actually had.  (Id. ¶ 81.)  Calderon also stated that Anderson told her that every accident victim had to get an x-ray or an MRI at Minnesota Radiology, regardless of any medical necessity, and to target Plaintiffs' insureds because they paid claims fast and regularly.  (Id. at ¶ 80-81.)  Calderon also confirmed that Camacho and Defendant Clinica de Accidentes worked for Anderson and the Defendant Clinics, and outlined a clear payment structure from Anderson to perpetrate the scheme.  (Id. ¶¶ 70-76.)

These allegations clearly put Defendants on notice of the "who, what, where, when and how" of Defendants' alleged fraudulent scheme.

**B.     Failure to State a Claim**

**1.  RICO**

**a.  Failure to Plead a Viable RICO Enterprise**

The elements of a RICO claim are: "1) the existence of an enterprise; 2) defendant's association with the enterprise; 3) defendant's participation in predicate acts of racketeering; and 4) defendant's actions constitute a pattern of racketeering activity." Sinclair v. Hawke, 314 F.3d 934, 943 (8th Cir. 2003).

Defendants argue that Plaintiffs have failed to plead a viable RICO enterprise.  "Enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  RICO is intended to reach "'a group of persons associated together for a common purpose of engaging in a course of conduct.'  Such an enterprise [] 'is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." Boyle v. United States, 556 U.S. 938, 944 (2009) (quoting United States v. Turkette, 452 U.S. 576, 583 (1981)).

An "enterprise" must exhibit three characteristics: "(1) common or shared purpose; (2) some continuity of structure and personnel; and (3) an ascertainable structure distinct from that inherent in the conduct of a pattern of racketeering." United States v. Lemm, 680 F.2d 1193, 1198 (8th Cir. 1982). The requirement that the RICO person be distinct from the enterprise itself, exists because RICO creates liability for the person, not the enterprise. Fogie v. Thorn Americas, Inc, 190 F.3d 889, 896 (8th Cir. 1999) ("The person who conducts or participates in the conduct of the RICO enterprise must be distinct from the enterprise itself.")

Defendants argue that Plaintiffs' "enterprise" allegations fail because they allege that Defendants are both RICO persons and the RICO enterprise. They argue that in paragraph 125 of the Amended Complaint, Plaintiffs allege "Defendants were persons within the meaning and definition of [RICO]." Then, in paragraph 130, Plaintiffs allege "Defendants are an enterprise within the meaning of [RICO]."

When read in its entirety, however, paragraph 130 clearly sets forth the Defendant entities have formed an association in fact with a common purpose – to submit illegal and fraudulent charges to insurance companies.

> Defendants are an enterprise within the meaning of 18 U.S.C. § 1961(4) because these entities are corporations and/or individuals associated in fact

11

and have conspired and colluded to submit illegal and fraudulent charges to insurance carriers, such as Plaintiffs, throughout the United States. The Plaintiffs are the intended victim of the Defendants' joint enterprise.

(Am. Comp. ¶ 130.)

The Court finds that Plaintiffs have sufficiently alleged the existence of a RICO enterprise that is distinct from the "persons" conducting a pattern of racketeering activity. See Lemm, 680 F.2d at 1198-1201 (finding that the allegations demonstrated an enterprise related to, yet distinct from, the predicate acts – "The arson ring, through hand-delivery of insurance claims, could have conducted its activities without any predicate acts of mail fraud."); see also Liberty Mut. Fire v. Acute Care Chiropractic, 88 F. Supp.3d 985, 1004-05 (D. Minn. 2015) (finding plaintiffs had properly alleged a RICO enterprise, where each clinic was directly connected to others, as evidenced by the profit and patient sharing, and because Defendants could continue to run as an enterprise by providing treatment for patients and billing them directly without the use of mail or wire fraud).

In this case, as in Acute Care, Plaintiffs allege that all Defendants are involved in a single association-in-fact, and that each clinic is directly connected to the others. In addition, Plaintiffs allege facts showing that Defendants'

enterprise is distinct from the predicate acts of mail and wire fraud, and that the Defendant Clinics comprise an enterprise because their purpose is to make a profit from providing services and treatment for patients. In addition, Defendants could continue to run as an enterprise by providing treatment for patients and billing them directly, without the use of mail or wire, and delivering the bills to patients by hand. See Acute Care, 88 F. Supp.3d 1005-06 ("While it is true that Plaintiffs' Complaint states that Defendants 'formed an ongoing association *for* purposes of defrauding the Plaintiffs,' under Eighth Circuit law, the purpose of the enterprise need not be distinct from the overall fraud. Rather, in order to state an actionable RICO claim, the enterprise need only exist separate from the 'predicate acts' alleged.").

In this case, Plaintiffs have alleged an enterprise that would still exist absent the racketeering activity of mail or write fraud because Defendants could continue to run as an enterprise by providing treatment to patients and billing them directly.

Defendants rely on two decisions involving kickbacks to chiropractic clinics, where the court held that the plaintiffs had not pled a RICO enterprise where it was alleged that defendants associated only for the purpose of

13

defrauding plaintiffs out of no-fault benefits by funneling accident victims to the clinics in order to provide unnecessary treatment or to bill for treatment that was not actually provided.  See Illinois Farmers Ins. Co. v. Guthman, Civ. No. 17-270 (RHK/SER), 2017 WL 3971867 (D. Minn. Sept. 7, 2017); Illinois Farmers Ins. Co. v. Mobile Diagnostic Imaging ("MDI"), Inc., No. 13-cv-2820 (PJS/TNL), 2014 WL 4104789 (D. Minn. Aug. 19, 2014).  Those cases are factually distinguishable from this case, however, and do not address the Eighth Circuit's decision in Lemm which recognized that allegations that defendants could continue to run as an enterprise, without the use of predicate acts of racketeering activity, sufficiently allege a RICO enterprise.

### b. Is RICO Claim Time-Barred

Civil RICO claims are governed by a four year statute of limitations. Agency Holding Corp. v. Malley-Duff & Assoc., Inc., 483 U.S. 143, 156 (1987). RICO claims accrue when the facts constituting the fraud were discovered, or by reasonable diligence should have been discovered.  Hope v. Klabal, 457 F.3d 784, 790-91 (8th Cir. 2006).

Defendants argue that this lawsuit was filed on November 13, 2017, therefore if Plaintiffs knew or should have known of facts constituting the fraud

before November 13, 2013, then the RICO claim is time-barred. Defendants argue that Plaintiffs knew of its injury more than seven years before it filed this lawsuit, as evidenced by the representative example that involves a claim from 2010, where the insured was treated extensively with Lake Street Chiropractors for injuries that occurred in an accident on July 5, 2010. (Am. Comp. ¶ 91.) Plaintiffs alleged that they learned from the Minnesota state trooper that responded to the accident that the insured was not involved in the accident. (Id.) Defendants argue that Plaintiffs thus knew the claim was fraudulent because they did not pay the claim.

Defendants further argue that Plaintiffs must plead fraudulent concealment in the complaint. See Summerhill v. Terminix, Inc., 637 F.3d 877, 880 (8th Cir. 2011). Because Plaintiffs did not allege any facts to support tolling the statute of limitations, Plaintiffs cannot raise the defense now.

However, as recognized in Summerhill, "[f]raud suspends the running of the statute of limitations . . . until the party having the cause of action discovers the fraud or should have discovered it by the exercise of reasonable diligence." Id., 637 F.3d at 880. Plaintiffs claim they did not know the extent of the fraudulent scheme until shortly before filing this action, and that they

15

learned of the fraud only after completing an investigation, which included confidential informants and Zulema Calderon.

At this time, the Court finds that Defendants have not demonstrated that dismissal is warranted on the basis that the claim is time-barred. In the event evidence comes to light demonstrating that Plaintiffs knew or should have known of the fraud before November 13, 2013, Defendants will be able to bring this issue before the Court in a motion for summary judgment.

### 2. Common Law Fraud, Negligent Misrepresentation, Disgorgement Under the No-Fault Act and Unjust Enrichment

Defendants argue that Plaintiffs' state law claims based on fraud must be dismissed as Plaintiffs have failed to plausibly plead that Defendants have committed fraud. In addition to arguing the allegations do not plead fraud with particularity, Defendants argue the fraud claims must be dismissed for the additional reason that Plaintiffs have failed to plead they suffered a pecuniary loss as a result of the fraudulent scheme. See U.S. Bank N.A. v. Cold Spring Granite Co., 802 N.W.2d 363, 373 (Minn. 2011) (to prove a common law fraud claim, plaintiff must prove reliance and pecuniary loss); Williams v. Smith, 820 N.W.2d 807, 815 (Minn. 2012) (to prove negligent misrepresentation claim,

plaintiff must prove justifiable reliance on the misrepresentation); Minn. Stat. § 65B.54, subd. 4 ("A reparation obligor may bring an action to recover benefits which are not payable, but are in fact paid, because of an intentional misrepresentation of a material fact, upon which the reparation obligor relies, by the claimant or by a person providing products or services for which basic economic loss benefits are payable.").

Defendants further assert that to state a claim for unjust enrichment, Plaintiff must show that Defendants knowingly received something of value, to which they were not entitled, and that it would be unjust for Defendants to retain said benefit.  Guinness Import Co. v. Mark VII Distribs., Inc., 153 F.3d 607, 613 (8th Cir. 1998).  Defendants assert that because the gravamen of the Amended Complaint is fraud, and because the allegations underlying those claims do not satisfy Rule 9(b), the unjust enrichment claim should also be dismissed.

For the reasons stated above, the Court finds that Plaintiffs have sufficiently pled their fraud claims with particularity, and have alleged the requisite elements of reliance and damages.  (See Am. Comp. ¶ 141 "The Defendants' representations were material since the information submitted to Plaintiffs was reasonable on its face and had been created so that Plaintiffs would

voluntarily issue payment to the Defendants.  Plaintiffs reasonably relied upon the false and misleading medical records and bills submitted by Defendants to the Plaintiffs.  Plaintiffs issued payment in reliance on the Defendants' medical records and bills"; ¶¶ 150 and 151 "Plaintiffs reasonably relied on the false and fraudulent medical records and bills since the records and bills appeared to be valid on their face.  Plaintiffs were damaged by their reasonable reliance on the medical records and bills submitted by Defendants."; ¶ 156 "Plaintiffs reasonably relied on the submissions provided by Defendants and paid Defendants' bills and charges.")

The Court further finds that Plaintiffs have stated a claim of unjust enrichment, by alleging that Defendants received insurance payments to which they were not entitled, as they were for unnecessary and/or treatment not rendered.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motions to Dismiss [Doc. Nos. 54 and 60] are **DENIED.**

Date:   May 25, 2018                                s/ Michael J. Davis
                                                    Michael J. Davis
                                                    United States District Court